EXHIBIT B

# SETTLEMENT AGREEMENT, RELEASE OF ALL CLAIMS, AND INDEMNITY AGREEMENT

## I. RECITALS

**A.** Gate Truckin Xpress, LLC ("Gate Truckin"), Fletchers Capital Group LLC ("Fletchers Capital"), and Lamar Deante Fletcher ("Fletcher") enter into this Settlement Agreement, Release of All Claims, and Indemnity Agreement (the "Settlement Agreement") to resolve claims on the part of Gate Truckin against Fletchers Capital and Fletcher as described more fully in the recitals stated below.

**B.** On March 1, 2022, Gate Truckin entered into an initial agreement with Fletchers Capital and Fletcher (the "First Agreement") in which Gate Truckin agreed to provide $25,000 to Fletchers Capital and/or Fletcher, and Fletchers Capital and Fletcher agreed to repay Gate Truckin in the amount of $32,000 by July 5, 2022 in monthly installments of $1,200. Gate Truckin performed under the terms of the First Agreement by providing $25,000 to Fletchers Capital via wire transfer. A copy of the First Agreement is attached hereto as Exhibit A.

**C.** Thereafter, on August 26, 2022, Gate Truckin entered into a second agreement with Fletcher and Fletchers Capital (the "Second Agreement"), a copy of which is attached hereto as Exhibit B. Under the terms of the Second Agreement, Gate Truckin agreed to provide $175,00 to Fletcher and Fletchers Capital, and Fletcher and Fletchers Capital agreed to repay that amount plus interest in an amount to equal $220,000 (the "Repayment"), which would be paid in full by March 23, 2023 in $10,000 installments to be paid every 45 days.

**D.** Under the terms of the Second Agreement, "if [Fletcher and Fletchers Capital] defaults in the performance of any obligation under [the Second Agreement], then [Gate Truckin] may declare the [remaining amount owed under the Second Agreement] at that time to be immediately due and payable."

**E.** The Second Agreement further states that Fletcher and Fletchers Capital are responsible for "the complete legal costs incurred by enforcing [the Second Agreement] as a result of any default by [Fletcher and Fletchers Capital]."

**F.** After the signing of the Second Agreement, Gate Truck performed under the terms that agreement (the Second Agreement) by providing $175,000 to Fletchers Capital and Fletcher. Gate Truckin, however, received only two of the monthly payments promised from Fletcher and/or Fletcher's Capital for a total of $20,000.

**G.** Gate Truckin has not received any payment under the Second Agreement since October 2022.

**H.** Until the Parties reached an agreement as it relates to this Settlement Agreement, Gate Truckin has only been paid $20,000 under the Second Agreement, and Fletcher and Fletchers Capital have failed to repay the full $220,000 owed by March 23, 2023 as promised under the Second Agreement.

**I.** Thus, Fletcher and Fletchers Capital have, among other things, committed breach of contract and fraud and are jointly and severally liable to Gate Truckin for damages arising from therefrom.

**J.** Based on the foregoing, on August 14, 2023, Gate Truckin initiated a lawsuit in the Superior Court of Thomas County, Georgia: *Gate Truckin Xpress, LLC v. Fletchers Capital Group, LLC*, et. al., SUCV2023000435 (the "Law Suit").

**K.** In the Law Suit, Gate Truckin asserts the following claims against Fletcher and Fletchers Capital: fraud, conspiracy to commit fraud, fraud by concealment, conspiracy to commit fraud by concealment, securities fraud, conspiracy to commit securities fraud, negligent misrepresentation, negligence, breach of fiduciary duty, violations of the Georgia RICO Act, breach of contract, unjust enrichment or quantum meruit, conversion, attorney's fees pursuant to O.C.G.A. § 13-6-11, and punitive damages.

**L.** Fletcher and Fletchers Capital were served with notice of the Law Suit as required by Georgia law.

**M.** In an effort to avoid further costs and expenses of litigation, the Parties now desire to enter into this Settlement Agreement to provide, among other things, for consideration for the full, final, and complete settlement and discharge of all claims and causes of action against Fletcher and Fletchers Capital related to the First Agreement, Second Agreement, and the facts related thereto as set forth in these Recitals, including all claims asserts by Gate Truckin in the Law Suit, on the terms set forth in this Settlement Agreement.

## II. RELEASE AND DISCHARGE OF CLAIMS AND POTENTIAL CLAIMS

A. Gate Truckin, and any past, present, and future agents, employees, officers, elected officials, appointed officials, heirs, beneficiaries, executors, administrators, personal representatives, members, shareholders, successors, and assigns (hereinafter referred to as "Releasors") hereby forever release, discharge, and acquit Fletcher and Fletchers Capital of any claims asserted against them in the Law Suit.

B. Upon execution of this Settlement Agreement by all parties to the Agreement, and as consideration in exchange for the Settlement Proceeds discussed below, Releasors agree to dismiss the claims asserted against Fletcher and Fletchers Capital in the Law Suit by filing a dismissal of claims with the Superior Court of Thomas County.

## III. AMOUNT TO BE PAID TO RELEASORS

At the express direction of Releasors' attorneys, and with Releasors' express approval, the amount of ONE HUNDRED AND FIFTY THOUSAND ($150,000.00) (the "Settlement Proceeds") will be paid to Releasors via wire transfer to Releasors' attorneys Alexander & Vann LLP. The Settlement Proceeds will be paid as follows:

- **A.** On or before May 20, 2024, Releasees will cause TEN THOUSAND DOLLARS ($10,000) to be paid to Releasors (the "First Payment");
- **B.** On or before June 20, 2024, Releasees will cause TEN THOUSAND DOLLARS ($10,000) to be paid to Releasors (the "Second Payment");
- **C.** On or before July 20, 2024, Releasees will cause TEN THOUSAND DOLLARS ($10,000) to be paid to Releasors (the "Third Payment");
- **D.** On or before August 20, 2024, Releasees will cause TEN THOUSAND DOLLARS ($10,000) to be paid to Releasors (the "Fifth Payment");
- **E.** On or before September 20, 2024, Releasees will cause TEN THOUSAND DOLLARS ($10,000) to be paid to Releasors (the "Sixth Payment");
- **F.** On or before October 20, 2024, Releasees will cause TEN THOUSAND DOLLARS ($10,000) to be paid to Releasors (the "Seventh Payment");
- **G.** On or before November 20, 2024, Releasees will cause TEN THOUSAND DOLLARS ($10,000) to be paid to Releasors (the "Eighth Payment");
- **H.** On or before December 20, 2024, Releasees will cause TEN THOUSAND DOLLARS ($80,000) to be paid to Releasors (the "Final Payment").

The Parties note that acceptance of late payments or variance from this payment schedule is not a waiver of any terms of this Settlement Agreement.

## IV. CAUSE OF ACTION IN CASE OF DEFAULT

Releasees expressly covenant to pay the Settlement Proceeds to the Releasors according to the schedule in **Section III**. In the event that Releasees default on any payment as stated in **Section III**, such failure will constitute a material breach of the Settlement Agreement and, subject to the notice requirements listed below in subparagraph **(A)**, will entitle Releasors to liquidated damages as described in subparagraph **(B)**.

A. **Notice**. In the event of a default as described above, before being entitled to damages for breach, Releasors will notify Releasees of such default through written notice to:

**Fletchers Capital Group LLC**

**1870 The Exchange**

**Suite 200**

**Atlanta, GA 30339**

**Lamar Deante Fletcher**

**4038 Braxton Place, SW**

**Atlanta, GA 30331-5850**

**Lamar Deante Fletcher**

**405 Tamarron Parkway SE**

**Atlanta, GA 30339-0201**

If the default is not cured within TEN (10) DAYS of receipt of such written

notice, Releasors will be entitled to a cause of action for beach of this Settlement Agreement.

B. **Liquidated damages.** In the event of default by Releasees of this Settlement Agreement, Releasors will be entitled the full amount of the Settlement Proceeds less any amount of the Settlement Proceeds that has been paid as of the event of default. In addition, in the event of default by Releasees, Releasees will be liable for a $25,000 penalty for default. Releasees are jointly and severally liable for the liquidated damages described herein.

C. **Attorneys' Fees.** In the event of default by either party, the defaulting party shall be liable for the cost of attorneys' fees and expenses incurred in enforcing the terms of this Settlement Agreement.

## V. GOOD FAITH RESOLUTION OF CLAIMS FOR NEW VALUE

This Settlement Agreement constitutes a good faith effort to resolve Releasors' claims against Releasees in an effort to avoid the cost and expense of litigation. As such, Releasees admit that they are liable to Releasors for the claims described herein, including but not limited to, breach of contract and fraud. Thus, in a good faith effort to resolve those claims, Releasors have agreed to discharge Releasees from those claims in exchange for the new consideration provided by Releasees and described herein – $150,000.00, which represents a settlement of the damages, attorneys' fees, and other costs for which Releasees would be liable to Releasors in a civil action for the causes of action described herein.

## VI. COVENANTS, REPRESENTATIONS, AND WARRANTIES

As an inducement for Releasees to enter into this Settlement Agreement, Releasors hereby covenant, represent, and warrant that:

A. Neither Releasors nor anyone acting on their behalf, have assigned, transferred, or sold, or purported to assign, transfer, or sell, to any person or entity any claim or potential claim, demand, action, cause of action, or right released by this Settlement Agreement;

B. Neither the existence of this Settlement Agreement nor any of its provisions shall be offered in evidence by Releasors in any action or proceeding other than an action to enforce this Settlement Agreement;

C. Releasors have not been influenced to any extent whatsoever by any representation or statement of Releasees, or any one of them, or any representation or statement of any representative of Releasees, and no statement, representation, promise, or agreement of any nature whatsoever, other than those contained in this written Settlement Agreement, has been made to or with them;

D. Before executing this Settlement Agreement, Releasors have discussed its contents with their attorneys and have fully informed themselves of its contents;

E. Releasors have relied solely upon their own judgment in entering into this Settlement Agreement, and they execute this Settlement Agreement with full knowledge of its contents and of their own free will and accord;

F. No other person has any derivative claims whatsoever, for any injury or damage alleged to have been sustained in connection with the First Agreement, Second Agreement, or the facts as described in the Recitals; and

G. Releasors have not been debtors in any bankruptcy proceedings or filed for protection under the bankruptcy laws at any time between the date of the First Agreement, Second Agreement, the facts described in the Recitals, and the execution of this Settlement Agreement.

As an inducement for Releasees to enter into this Settlement Agreement, Releasors hereby covenant, represent, and warrant that:

H. Neither the existence of this Settlement Agreement nor any of its provisions shall be offered in evidence by Releasees in any action or proceeding other than an action to enforce this Settlement Agreement;

I. Releasees have not been influenced to any extent whatsoever by any representation or statement of Releasors, or any one of them, or any representation or statement of any representative of Releasors, and no statement, representation, promise, or agreement of any nature whatsoever, other than those contained in this written Settlement Agreement, has been made to or with them;

J. Before executing this Settlement Agreement, Releasees have been given an opportunity to discuss its contents with legal counsel and have fully informed themselves of its contents;

K. Releasees have relied solely upon their own judgment in entering into this Settlement Agreement, and they execute this Settlement Agreement with full knowledge of its contents and of their own free will and accord;

L. No other person has any derivative claims whatsoever, for any injury or damage alleged to have been sustained in connection with the First Agreement, Second

Agreement, or the facts as described in the Recitals, and

M. Releasees have not been debtors in any bankruptcy proceedings or filed for protection under the bankruptcy laws at any time between the date of the First Agreement, Second Agreement, the facts described in the Recitals, and the execution of this Settlement Agreement

## VII. INDEMNITY AGREEMENT

**A.** For the consideration set out above, the Parties stipulate and agree to defend, indemnify, and forever hold harmless the Parties or any of them against any claim or claims, action or actions, causes of action, damages, demand or demands (including attorney fees, expert witness fees, court costs, costs of obtaining medical reports, and expenses of litigation) which may hereafter be brought or instituted against the Parties, or any one of them, by any person, firm, corporation, authority, governmental agency, or other entity because of, or in any manner arising from, growing out of, or connected directly or indirectly with, the injuries and damages sustained by the Releasors as a result of the First Agreement, Second Agreement, and the facts stated in the Recitals. This indemnity obligation expressly includes, but is not limited to, an obligation to defend and indemnify the Parties for claims arising from the sole negligence or conduct of the Parties, or any one of them, and for the costs, including attorney fees, of enforcing this indemnity agreement. The Parties waive all rights of exemption, both as to real and personal property, to which they may be entitled under the laws of the State of Georgia or any other state as against such claims for reimbursement or indemnity. The Parties also waive all rights of exemption or stay available under the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

**B.** The Parties understand and agree that this indemnity obligation applies to any judgment rendered against the Parties on a claim for contribution or indemnity brought against the Parties, or any one of them, arising out of any claim filed by the Parties or anyone on their behalf related to the First Agreement, the Second Agreement, and/or the facts as stated in the Recitals.

## VIII. MISCELLANEOUS

**A.** The Parties acknowledge that they are represented by legal counsel in these matters or that they have been given every opportunity to consult with an attorney; that they have been given an opportunity for their attorney to explain the meaning and intent of the wording of this Settlement Agreement; and that they understand those matters.

**B.** The Parties acknowledge and agree that this Settlement Agreement contains the entire agreement and understanding of the parties with respect to the settlement of the claims and potential claims described herein, supersedes all prior agreements, arrangements, and understandings relating to the subject matter of this Settlement Agreement, and is binding upon the Parties and their agents, representatives, successors, assigns, and heirs.

**C.** Releasors understand and agree that they may hereafter discover facts different from or in addition to those which they now know or believe to be true with respect to the claims being released by this Settlement Agreement and that, in such event, this Settlement Agreement shall nevertheless be effective and remain in force in all respects, absent the discovery of fraud on the part of the Releasees or any one of them as it relates to the Settlement Agreement.

**D.** The Parties understand and agree that the Settlement Proceeds constitute the full, complete and entire consideration for this Settlement Agreement, and understand and agree that there is no agreement, oral or written, express or implied, whereby they, or either one of them, may be entitled to receive at any time or in any event or upon the happening of any contingency, any further consideration of any kind whatsoever from the Parties, or any one of them.

**E.** The Parties understand and agree that the section headings are included solely for convenience of reference and, in the event of any conflict between any section heading and the text of this Settlement Agreement, the text shall control.

**F.** The Parties acknowledge and agree that this Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of Georgia and without giving effect to the principles of conflicts of laws.

**G.** The Parties acknowledge and agree that, if a court of competent jurisdiction determines that any term, provision, or part of this Settlement Agreement is invalid, unenforceable, or void for any reason whatsoever, then such invalid, unenforceable, or void term, provision, or part shall be severed from the remainder of this Settlement Agreement.

**H.** The Parties acknowledge and agree that, once this Settlement Agreement has been fully executed, a copy of the fully executed document may serve as an original for all purposes, including, but not limited to the introduction of the Settlement Agreement as evidence in any legal proceeding.

## IX. CONFIDENTIALITY

The Parties agree that the terms of this Settlement Agreement are confidential.

X. **TAX CONSEQUENCES**

Releasors acknowledge that they have received no advice from any Releasee, from any Releasee's attorney(s), or from anyone associated with Releasees or Releasees' attorneys, with respect to any tax consequences of this Settlement Agreement or the payment of the Settlement Proceeds. Pursuant to the provisions of IRS Circular 230, nothing contained in this Settlement Agreement is intended to be used, and cannot be used, for the purpose of avoiding any tax consequences, including tax penalties, relating to the matters reflected herein.

***

Having carefully read this Settlement Agreement in its entirety and having fully informed themselves of and understanding its contents, Gate Truckin, Fletcher, and Fletchers Capital indicate their agreement by executing this Settlement Agreement of their own free will as of the date first set forth below.

**SIGNATURES**

Sworn to and subscribed before me, this 16th day of May, 2024.

[signature] (Seal)
LAMAR DEANTE FLETCHER

Geneva F Vaughn
NOTARY PUBLIC
Gwinnett County, GEORGIA
My Commission Expires
09/28/2027

Notary Public [signature: Geneva F. Vaughn]

My Commission Expires: 9/28/27

Sworn to and subscribed before me, this 16th day of May, 2024.

[signature] (Seal)
LAMAR DEANTE FLETCHER *on behalf of FLETCHERS CAPITAL GROUP LLC*

Geneva F Vaughn
NOTARY PUBLIC
Gwinnett County, GEORGIA
My Commission Expires
09/28/2027

Notary Public [signature: Geneva F. Vaughn]

My Commission Expires: 9/28/27

Sworn to and subscribed before me, this 20th day of May, 2024.

Anthony Williams (Seal)
Anthony ~~ANTHONEY~~ WILLIAMS *on behalf of GATE TRUCKIN XPRESS, LLC*

AW

Notary Public [signature]

My Commission Expires: 12/28/27

MJ CLANTON
NOTARY
PUBLIC
EXP. DEC. 28, 2027
THOMAS COUNTY, GA



AW
GT LLC
[initials]
LF

FC LLC